**FEDERAL DEPOSIT INSURANCE CORP.**

v.

**Donnie D. AMUNDSON, et al.**

and

**Vince SUILMAN**

v.

**Cy KRUSE, et al.**

Civ. No. 4–87–432.

United States District Court, D. Minnesota, Fourth Division.

Feb. 23, 1988.

Brian E. Palmer, Dorsey & Whitney, Minneapolis, Minn., and Max H. Kumin, FDIC, Washington, D.C., for plaintiff.

George E. Antrim, III, Minneapolis, Minn., for John C. Andren.

Susan E. Barnes and Mary E. Curtin, Curtin & Barnes, Minneapolis, Minn., for Michael L. Holmgren.

Robert C. Sipkins, Bernick & Stern, St. Louis Park, Minn., for Cyril J. Schweich and Schweich Const. Co.

Douglas B. Altman, Schermer, Altman & Izek, Minneapolis, Minn., for Vincent Suilman.

Norbert B. Traxler, O'Neil, Traxler & Zard, New Prague, Minn., for Cy Kruse.

James G. Bullard, Leonard, Street & Deinard, Minneapolis, Minn., for James M. Heckenlaible.

Robert J. Sheran, Lindquist & Vennum, Minneapolis, Minn., for Mary E. Curtin and Susan E. Barnes.

## AMENDED ORDER

ROSENBAUM, District Judge.

This matter is before the Court upon the motion of plaintiff Federal Deposit Insurance Corporation (FDIC), in its corporate capacity as purchaser of certain assets of the First National Bank of Prior Lake (the bank). The FDIC seeks to disqualify Mary E. Curtin [1] from her representation of her client, defendant Michael L. Holmgren (Holmgren). Holmgren is a former chairman of the board of directors of the First National Bank of Prior Lake.

The FDIC seeks to disqualify Ms. Curtin because she represented the bank and its board of directors during the 13 days between May 11, 1984, and May 24, 1984. On the later date, the Comptroller of the Currency of the United States (COC) determined the bank to be insolvent and closed it pursuant to the National Bank Act, 12 U.S.C. §§ 21, *et seq.*, under authority of 12 U.S.C. § 191.

It is plaintiff's position that Ms. Curtin should be disqualified from representing Holmgren in accordance with various provisions of the American Bar Association Code of Professional Responsibility (ABA Code) which, during the time of this motion, applied to lawyers practicing before this Court.[2]

After oral argument, and based on the files, records, and proceedings herein, as well as for the reasons set forth below, this Court denies plaintiff's motion.

*Factual Background*

The First National Bank of Prior Lake was a national banking association organized and existing under the laws of the United States. The bank did business in Scott County, Minnesota continuously from its opening on October 1, 1982, until May 24, 1984, when the COC determined the bank was insolvent.

Prior to the bank's closure, Mary E. Curtin, an attorney specializing in the area of banking and bank regulation, represented the bank and its board of directors. This representation ran from the weekend of May 11, 1984, to May 24, 1984, when the COC closed the bank. At the time Ms. Curtin was retained, the bank had been told that the COC believed the bank to be insolvent and was considering bank closure. Curtin affidavit, paragraph 8. The COC had also told various board members that the agency anticipated action to remove the bank's president, Donnie Amundson, because of bank loans to Micro Information Publishing (Micro) and Software Strategies (Software) corporations. These entities were controlled by one of the bank's directors, Gerald VanDiver (VanDiver).

Upon assuming her representation of the bank and its board of directors, Ms. Curtin informed both Amundson and VanDiver that they should obtain different counsel. Curtin affidavit, paragraph 8. She consulted with the board and its chairman, Holmgren, concerning efforts to recapitalize the

---

**1.** At the time the FDIC moved to disqualify Ms. Curtin and Lindquist & Vennum, Ms. Curtin was a partner in the Lindquist & Vennum law firm. As of August 31, 1987, Ms. Curtin became a partner in the firm of Curtin & Barnes. Ms. Curtin's representation of Holmgren transferred to her new partnership. All parties acknowledge that Lindquist & Vennum is no longer representing Holmgren, and this matter is moot as to that firm. Lindquist & Vennum is no longer a party to this proceeding beyond its representation of Ms. Curtin in this motion.

**2.** This analysis is premised on the rules under which this motion was made. Application of the Rules of Professional Conduct as adopted by this Court in its local rules, which became effective November 1, 1987, would render a similar result. *See* United States District Court for the District of Minnesota Local Rules of Procedure, Rule 1.C.

bank and collect certain loans. She attended meetings between the board and the COC, negotiated with the COC, helped the board locate and select a new chief executive officer for the bank, and had significant contact with the principals of both Micro and Software in an attempt to negotiate either additional collateral for their loans or a significant reduction of the credits outstanding at the bank. Curtin affidavit, paragraphs 9, 10, and 11.

Ms. Curtin also dealt with the COC in an attempt to convince it that the bank was not insolvent and should not be closed. Curtin affidavit, paragraphs 12 and 13. During this period, Ms. Curtin dealt with the COC and did not deal directly with the FDIC. Curtin affidavit, paragraphs 11 and 12.

When the bank's closure was imminent, Ms. Curtin sought an injunction to restrain the final act. On May 23, 1984, FDIC representatives attended and argued against Ms. Curtin's requested temporary restraining order.

On May 24, 1984, the COC closed the bank and took over its possession, control, and assets for the purpose of liquidation through receivership, pursuant to 12 U.S.C. § 191. The FDIC was appointed receiver of the bank pursuant to 12 U.S.C. § 1821(c) and undertook the administration of the bank's assets and affairs, pursuant to 12 U.S.C. § 1821(d), by order of the Honorable Donald D. Alsop of this court. On that same date, Judge Alsop entered an order authorizing the sale of certain assets of the bank by the FDIC, as receiver, to the FDIC, in its corporate capacity. These assets included all claims against the bank's directors, officers, or employees arising out of the performance or nonperformance of their duties with respect to the bank or its property.

After the bank's failure, the COC assessed civil money penalties against the board members for alleged violations of 12 U.S.C. § 84. Ms. Curtin represented several board members in the negotiation of the penalties with COC. Curtin affidavit, paragraphs 11, 12, 13, and 14.

On May 14, 1987, the FDIC, as purchaser of certain bank assets and assignee of the bank's causes of action, commenced the present lawsuit against certain former officers and/or directors of the bank. Plaintiff FDIC is a corporation organized and existing under the laws of the United States, with the power to sue and be sued. *See* 12 U.S.C. §§1811, *et seq.*

In the underlying complaint, the FDIC alleges defendants: a) provided or permitted the bank's officers or agents to provide loans in excess of statutory limits, in violation of 12 U.S.C. § 84; b) made preferential extensions of credit, in violation of 12 U.S. C. §§ 375a and 375b; and c) breached various duties of loyalty, due care, and good faith, as well as the oath required under 12 U.S.C. § 73. In sum, the lawsuit concerns the conduct and performance of certain former directors of the bank. The action specifically concerns the genesis of, and responsibility for, the Micro and Software loans. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1345 and 12 U.S.C. § 1819.

The FDIC claims that in late May, 1987, it first became aware Ms. Curtin was representing Holmgren in this litigation and that she had previously represented the bank and its board of directors in certain matters prior to the closing of the bank in May, 1984.

It is at this juncture that the FDIC's motion to disqualify Ms. Curtin as counsel for Holmgren comes before this Court for consideration.

*Discussion*

The FDIC contends Ms. Curtin's prior representation of the bank and its board of directors constitutes a conflict of interest requiring the disqualification of Ms. Curtin and her firm from representing Holmgren in this litigation.

■ "A fundamental responsibility of ... [the district] court is the supervision of the attorneys who appear and practice before it." *Black v. State of Mo.,* 492 F.Supp. 848, 859 (W.D.Mo.1980), *citing Arkansas v. Dean Foods Products Co., Inc.,* 605 F.2d 380, 383 (8th Cir.1979); *Fred Web-*

er, Inc. v. Shell Oil Co., 566 F.2d 602, 605· (8th Cir.1977), cert. denied, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978).[3] In considering plaintiff's motion to disqualify, "the Court is guided by the principles set forth in the ABA Code." Black, 492 F.Supp. at 860. This code, prior to November 1, 1987, had been applicable to lawyers appearing before this Court. These canons serve as guidelines, and while they "must be given considerable weight, they should not be applied inflexibly or without consideration of 'realities of which fair decision would call for judicial notice.'" Black, 492 F.Supp. at 861, citing Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp., 518 F.2d 751, 753 (2d Cir.1975). "Those realities include society's interest in the most expedient resolution of matters which affect the public at large, and a client's interest in retaining his chosen counsel." Black, 492 F.Supp. at 861, citing Dean Foods, 605 F.2d at 383; Woods v. Covington County Bank, 537 F.2d 804, 810 (5th Cir.1976); City of Cleveland v. Cleveland Elec. Illuminating Co., 440 F.Supp. 193, 195 (N.D.Ohio 1976), aff'd, 573 F.2d 1310 (6th Cir.1977).

The decision to disqualify a competent lawyer, freely chosen by a party, is of serious concern to this Court. "[E]thical questions cannot be resolved by a scientific application of principles and precedents because '[n]o code of ethics could establish unalterable rules governing all possible eventualities.'" Black, 492 F.Supp. at 861, citing Cannon v. U.S. Acoustics Corp., 398 F.Supp. 209, 215 (N.D.Ill.1975), modified on other grounds, 532 F.2d 1118 (7th Cir.1976); see Dean Foods, 605 F.2d at 383.

The FDIC contends that Ms. Curtin's present representation of Holmgren is a violation of Canons 4, 5, and 9 of the ABA Code requiring her disqualification. These canons provide:

Canon 4:

A lawyer should preserve the confidences and secrets of a client.

Canon 5:

A lawyer should exercise independent professional judgment on behalf of a client.

Canon 9:

A lawyer should avoid even the appearance of professional impropriety.

The Court will consider separately each of the Canons.

### Canon 4: Client Confidentiality

Canon 4 requires "the attorney 'to preserve the confidences and secrets of a client.' The ... purpose of this ethical principle ... is to encourage unbridled and thorough communication between clients and their attorneys." Black, 492 F.Supp. at 863; see Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); see also ABA Code, Ethical Considerations 4–4 and 4–5; C. McCormick, Handbook of the Law of Evidence § 87 (2d ed. 1972). "[T]he client must be secure in his belief that his lawyer will never disclose secrets confided in him." Black, 492 F.Supp. at 863; citing Doe v. A.Corp., 330 F.Supp. 1352, 1354 (S.D.N.Y. 1971), aff'd per curiam, sub nom., Hall v. A.Corp., 453 F.2d 1375 (2d Cir.1972). To assure the client this security, courts have developed a general test to determine whether a client's confidentiality may have been violated. The following elements must be present:

(1) the movant party was previously represented by the attorney whose disqualification he seeks;

(2) the matters embraced within the pending suit are substantially related to the matters or the cause of action for which the attorney previously represented the movant party; and

(3) the attorney is representing an adversary of the movant party in the pending suit.

Black, 492 F.Supp. 863; see General Elec. Co. v. Valeron Corp., 608 F.2d 265, 267

---

**3.** The Court notes that Weber and Dean Foods provide for interlocutory appeal of an order denying a motion for the disqualification of counsel. That rule, however, was overruled by the Eight Circuit Court of Appeals in Firestone Tire and Rubber Co. v. Risjord, 612 F.2d 377, 378 (8th Cir.1980). The precedential and substantive value of Weber and Dean Foods remains unchanged in all other respects.

(6th Cir.1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Dean Foods,* 605 F.2d at 383–86; *Weber,* 566 F.2d at 607–8.

Thus, one who seeks to employ Canon 4 to disqualify opposing counsel must show that: 1) the moving party and opposing counsel actually had a prior attorney-client relationship; 2) the interests of opposing counsel's present client are adverse to the movant; and 3) the matters involved in the present underlying lawsuit are substantially related to the matters for which the opposing counsel previously represented the moving party. *See Weber,* 566 F.2d at 608; *Dean Foods,* 605 F.2d at 383–85; *see also Yetter Mfg. Co. v. Hiniker Co., Inc.,* 213 U.S.P.Q. 119, 120 (D.Minn.1981) (Alsop, J.).

Once the moving party has established these three elements, "a presumption arises that confidences of the movant-client were disclosed to the attorney in the course of the prior representation, confidences which the attorney might use to the detriment of the movant in the current action." *Black,* 492 F.Supp. at 863, *citing Dean Foods,* 605 F.2d at 383; *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F.Supp. 265, 268–69 (S.D.N.Y.1953).

Thus, the moving party "need not prove the actual passage of confidences to the attorney, or even the access of the attorney to such confidences .... [H]owever, it is not clear whether that presumption may ever be rebutted by the attorney. As a general rule, the presumption is 'irrefutable' or 'conclusive.'" *Black,* 492 F.Supp. at 863–64, *citing General Elec. Co. v. Valeron Corp.,* 608 F.2d 265, 267 (6th Cir.1979); *Dean Foods,* 605 F.2d at 385; *Weber,* 566 F.2d at 608; *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976); *see Yetter,* 213 U.S.P.Q. at 120.

In this case, Ms. Curtin and the bank with its board of directors certainly had an attorney-client relationship. Ms. Curtin represented the bank and the board in matters involving the COC. Ms. Curtin consulted extensively with her client bank and board in an attempt to keep the bank alive. As set forth above, the bank was closed on May 24, 1984, and the FDIC was appointed its receiver.

Plaintiff FDIC, acting both in its corporate capacity and as an assignee of some of the bank's assets, contends that it stands in the legal shoes of the FDIC, acting as receiver of the bank. Plaintiff argues, therefore, that it may assert the existence of the prior attorney-client privilege of Ms. Curtin and the bank, thereby establishing the prior attorney-client relationship element required by Canon 4. The FDIC, therefore, argues that it may raise the issue of conflict of interest in the present action.

Plaintiff further contends that Holmgren's interest in the current lawsuit is adverse to that of the FDIC making Ms. Curtin's present representation of Holmgren "substantially related to" the matters for which Ms. Curtin previously represented the bank. This, they claim, establishes the second and third elements under Canon 4, thus disqualifying her from representing Holmgren.

Plaintiff premises its contention that it may assert the bank's attorney-client privilege on two district court cases: *Federal Deposit Insurance Corporation v. Ellis, et al.,* Civil No. CV84–PT–2560–M, slip op. (N.D.Ala. Dec. 19, 1985), and *Federal Deposit Insurance Corporation v. Berry,* Civil No. 1–85–62, slip op. (E.D.Tenn. June 3, 1985). These cases in turn rely upon the United States Supreme Court's decision in *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). In *Weintraub,* the Supreme Court held that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications." *Weintraub,* 471 U.S. at 358, 105 S.Ct. at 1996.

*Weintraub,* however, is not on point with the question presented in this case: whether the attorney-client privilege between Ms. Curtin and the failed bank extends to the FDIC. The *Ellis* and *Berry* courts found *Weintraub* to be "somewhat analogous" to

this question and, therefore, permitted the FDIC to assert the attorney-client privilege formerly belonging to the closed bank. *Ellis*, slip op. at 2; *Berry*, slip op. at 7.

This Court finds the analogy strained. The bankruptcy trustee maintains the pre-existing entity, managing its affairs. The prior management is supplanted and efforts are made to run the existing business entity in a prudent fashion or to systematically wind it down and fairly distribute its assets.

In the present case, the better analogy shows the FDIC to be a liquidator. A disaster has hit an insured building. The insurance company (the FDIC as receiver) has paid on its policy and sells the disaster site—lock, stock, and barrel—to a liquidator (the FDIC in its corporate capacity). There is no thought or effort to reconstitute the entity or to run it at all. There is only an effort to sift the ashes, selling off what is valuable or collecting on its receivables. This case is part of an effort to collect its receivables.

In *Weintraub*, the prior management of the bankrupt corporation attempted to assert a modicum of control over its former business by claiming the attorney-client privilege. The attorney-client privilege was used as a prior-management defensive tactic. In this case, the liquidator seeks to use the "potential" conflict of interest as an offensive tactic. In *Weintraub*, the bankruptcy trustee sought material which was of value to the bankrupt estate. The battle was over control of the extant corporation, in whosoever control it lay. Here, the potential conflict of interest assertion is of no value to the FDIC—save and except as a sword to drive into its opponent. The bank is dead. There is no existing—or potential—corporation. That entity is gone and it will not, and cannot, be reconstituted. The FDIC's assertion is a pure substitution of claimed form for function.

For there to be a conflict under Canon 4, FDIC must show that Holmgren's interests are adverse to its own. To belabor the obvious, it must be pointed out that the bank is not a party. The bank no longer exists. It is the FDIC which is the party.

The FDIC argues that, even if the Court finds the attorney-client requirement lacking, the FDIC would still have standing to raise the conflict of interest issue given the public's interest in its legal proceedings. The FDIC cites *Federal Deposit Insurance Corporation v. Rex Niver, et al.,* — F.Supp. ——, Civil Nos. 85–2642–S, 85–2160–S, 86–2236–S (D.Kan. Jan. 27, 1987). *Niver* found that the FDIC could raise the conflict of interest issue as a third party. *Niver*, slip op. at 3. This is a divergence from the general rule that courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification. *See In Re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir.1976); *Black*, 492 F.Supp. at 864. The *Niver* court, citing *Beck v. Board of Regents of the State of Kansas*, 568 F.Supp. 1107, 1110 (D.Kan. 1983), held "where the interests of the public are so greatly implicated ... third parties ... are ... entitled to raise any apparent conflicts of interest which may tend to undermine the validity of the proceedings."

This Court rejects the *Niver* formulation. Absent some showing—beyond the metaphysical—that there is some public interest or some wrong either committed or hidden, this Court opts in favor of the client's free selection of a competent attorney when faced with the wrath of a giant national entity. This Court will bow to no one in its anger and in the steps it will take in response to a demonstrable breach of the high standards expected—and demanded— of counsel to the United States District Courts. But the conjuring of an apparition will not trigger a response injurious to the attorney-client bond.

"The decision to disqualify an attorney chosen by a party to represent him in a lawsuit is of serious concern and the court's inherent power to do so should only be exercised where the integrity of the adversary process is threatened. Even then, the court should not act 'unless the offending attorney's conduct threatens to taint the underlying trial' with serious ethical violation." *Beck*, 568 F.Supp. at 1110. The key is whether there is a substantial

relationship between the previous matter and the present litigation. *See Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1987); *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 38 (D.D.C.1984). "The Court must ask whether it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject of ... [the] subsequent representation." *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268–69 (S.D.N.Y.1953); *Laker*, 103 F.R.D. at 38.

To satisfy the substantial relationship test, the moving party must establish "that the relationship between issues in the prior and present cases is patently clear ... [and] the issues involved have been essentially the same ...." *Williamsburg Wax Museum v. Historic Figures, Inc.*, 501 F.Supp. 326, 329 (D.D.C.1980), *quoting Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739–40 (2d Cir.1978); *see Laker*, 103 F.R.D. at 38 n. 60.

In the case at hand, Ms. Curtin's primary goals of employment were the continued viability of the bank. In this regard, she consulted extensively with the bank's board of directors concerning recapitalization. Curtin affidavit, paragraphs 8–12. Neither efforts to maintain the bank, nor efforts to recapitalize the bank, nor efforts to collect loans are at issue in this action. Rather, the FDIC's claim involves Holmgren's conduct as a bank director in the exercise of his duties. The Court finds that the allegations of the FDIC do not establish that a substantial relationship existed between the two representations. The Court finds the FDIC has failed to establish that disqualification is warranted under Canon 4.

### Canon 5: Independent Judgment

■ The FDIC contends that Ms. Curtin's representation of Holmgren violates Canon 5's directive that an attorney "exercise independent professional judgment on behalf of a client." *Black*, 492 F.Supp. at 862. The FDIC's claim is based on the same theory underlying the Canon 4 attack —prior conflicting representation by Ms. Curtin which precludes the independent judgment which Ms. Curtin should exercise on behalf of her present client. *See Black*, 492 F.Supp. at 862, *citing Weber*, 566 F.2d at 608–9 (footnote omitted). Beyond the talismanic incantation of the words that Ms. Curtin cannot be independent in her judgment, the FDIC has failed to provide the Court with anything which indicates Ms. Curtin is unable to exercise independent, professional judgment on Holmgren's behalf. The FDIC's claim for disqualification under Canon 5 is not warranted.

### Canon 9: Appearance of Impropriety

■ Canon 9 of the ABA Code provides that "[a] lawyer should avoid even the appearance of professional impropriety." The concern of Canon 9 is "that people in addition to getting justice should be made to feel and see that they are getting it." *Black*, 492 F.Supp. at 873; *citing Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1088 (3rd Cir.) *cert. denied, sub nom., Arthur Andersen & Co. v. Kramer*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). Canon 9 goes beyond Canons 4 and 5. The conduct under scrutiny must "be evaluated in an eye of the beholder context, and the lawyer must be disqualified when an actual appearance of evil exists .... [However] there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Weber*, 566 F.2d at 609; *see Woods v. Covington County Bank*, 537 F.2d 804, 813 (5th Cir. 1976); *see also Black*, 492 F.Supp. at 872; *Yetter*, slip op. at 4–5. The Court's earlier discussion of Canons 4 and 5 makes clear there is no "reasonable possibility that some specifically identifiable impropriety did in fact occur." *Id.* Accordingly, the Court finds no failure by Ms. Curtin to comply with Canon 9.

We have reached a difficult and unpleasant stage in our legal-ethical development. We are now in a time when ethics has ceased to be a common guide to virtuous behavior. It is now a sword in hand, to be used to slay a colleague. This kind of ethics does not reflect a heightened awareness of moral responsibility or a means to

temper one's zeal for his or her client. It is instead a means to hobble the opposition by driving a spurious wedge between a client and chosen counsel.

What is the public interest being preserved by this motion? This was a tiny bank with but a few in executive and management positions. The bank, as an entity apart from this managing group, scarcely existed. The FDIC's motion suggests absolutely nothing that was known by or given to challenged counsel. The motion is premised on a stated concern to prevent the appearance of a conflict. The motion devolves into an effort to avoid the created-appearance of an appearance of a conflict. This Court suggests that not only is the FDIC's emperor without clothes; there may well be no emperor. The FDIC has failed to establish any violation whatsoever of Canons 4, 5, or 9 of the ABA Code.

Based on the foregoing, and upon review of the files, records, and proceedings herein, IT IS ORDERED that:

Plaintiff's motion for disqualification is denied.