**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Farrell D. McATEE, et al., Defendants.**

**Civ. A. No. 87-2459-O.**

United States District Court,
D. Kansas.

Dec. 29, 1988.

James R. Goheen, Charles A. Getto, and Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., for plaintiff.

Farrell D. McAtee, St. Francis, Kan., pro se.

William G. Howard, Lathrop Knnotz & Norquist, Overland Park, Kan., Daniel M.

Dibble, Lathrop Koontz & Norquist, Kansas City, Mo., for Arthur J. Dowling, Stuart H. Euhus, Lloyd Moore and Frederick L. Helmkamp.

J. Eugene Balloun, J. Richard Golub, Timothy M. O'Brien, Shook, Hardy & Bacon, Overland Park, Kan., for Ray A. Lohoefener and Gregory K. Lohoefener.

Lee Turner, Turner & Boisseau, Chartered, Great Ben, Kan., for Gale W. Cook.

Michael E. Francis, Deanne Watts Hay, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for Fidelity & Deposit Co. of Maryland.

Donald F. Hoffman, Dreiling, Bieker & Hoffman, Hays, Kan., for Farrell D. McAtee.

## MEMORANDUM AND ORDER

GERALD L. RUSHFELT, United States Magistrate.

Under consideration is Plaintiff's Motion to Compel, or For Determination of Attorney–Client Privilege (doc. 114). Plaintiff's motion to compel and alternative motion for a determination of attorney-client privilege seeks materials withheld from production by Stinson, Mag and Fizzell, a law firm. It prepared this material while acting as counsel for the now defunct Decatur County National Bank of Oberlin, Kansas (hereinafter DCNB). The Federal Deposit Insurance Corporation (hereinafter FDIC) was appointed as receiver as permitted under 12 U.S.C. § 1821(c). As receiver, it sold certain DCNB assets to a separate bank and transferred others to itself in its corporate capacity. Such transfers included the claims in this action against the defendants as former directors, officers or employees of DCNB. In the present lawsuit plaintiff FDIC in its corporate capacity seeks relief against former DCNB officers and directors for alleged breach of fiduciary duties and negligence.

FDIC–Corporate then sought to interview attorneys of Stinson, Mag and Fizzell, and obtain all documents generated while the firm was acting as counsel for DCNB. The FDIC claims it stands in the shoes of DCNB for the purpose of pending litigation and that it had authority to succeed to the attorney-client privilege. To support this proposition, plaintiff relies upon *Odmark v. Westside Bankcorporation, Inc.,* 636 F.Supp. 552 (W.D.Wash.1986).

Defendants Ray A. and Greg K. Lohoefener oppose the motion. They argue *Odmark* is distinguishable because the banking entity, although in receivership, continued to exist. In this case they argue DCNB is no longer a legal entity and the FDIC is not acting in the capacity as a trustee or receiver. They contend FDIC–Corporate is a mere assignee of certain assets. They further argue DCNB has dissolved and thus could possess no attorney-client privilege. *II Winstein's Evidence,* Section 503(c)(01) (1986 N.Supp.1988). Defendant Lohoefeners argue *Federal Deposit Ins. Corp. v. Amundson,* 682 F.Supp. 981 (D.Minn.1988) is the only case on point and contains the controlling precedent. The *Amundson* case held the FDIC, in its corporate capacity, did not control the attorney-client privilege for communications with the former bank's attorneys.

Plaintiff FDIC further relies on *Federal Deposit Ins. Corp. v. Berry,* Civil 1–85–62 slip op. (E.D.Tenn. June 3, 1985) and *Federal Deposit Ins. Corp. v. Ellis, et al.,* Civil No. CV84–PT2560–M, slip op. (N.D.Ala. December 19, 1985). It cites these cases for the proposition that the FDIC in its corporate capacity could assert the attorney-client privilege of the defunct Bank. Although *Amundson, Berry* and *Ellis* all concern disqualification of counsel, they address the issues in this case. *Amundson* criticized *Berry* and *Ellis,* as follows:

> These cases in turn rely upon the United States Supreme Court decision in *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). In *Weintraub,* the Supreme Court held that "The trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications." *Weintraub* 471 U.S. at 358, 105 S.Ct. at 1996. *Weintraub* however is not on point with the question presented in this case: Whether the attorney-client privilege between Ms. Curtin (the attorney) and the failed bank, extends to the FDIC. The

*Ellis* and *Berry* courts found *Weintraub* to be "somewhat analogous" to this question and therefore permitted the FDIC to assert the attorney-client privilege formerly belonging to the closed bank. *Ellis* slip op. at 21, *Berry* slip op. at 7.

This court finds the analogy strained. The bankruptcy trustee maintains the pre-existing entity, managing its affairs. The prior management is supplanted and efforts are made to run the existing entity in a prudent fashion or to systematically wind it down and fairly distribute its assets.

In the present case the better analogy shows the FDIC to be a liquidator.... There is no thought or effort to re-constitute the entity or run it at all. There is only an effort to sift the ashes, selling off what is valuable or collecting on its receivables. This case is part of an effort to collect its receivables.

*Amundson* 682 F.Supp. at 986–87.

The court finds *Amundson* controlling in this case. *Odmark* is distinguishable. There the FSLIC was acting as a receiver. The entity controlling the attorney-client privilege—the Bank—continued to exist. When the entity controlling the privilege no longer exists, the reasoning of *Admundson* should apply.

 In its corporate capacity plaintiff FDIC now possesses certain assets of DCNB. The transfer of assets from one entity to another does not generally transfer the attorney-client privilege. See *e.g. Telectronics Proprietary Ltd. v. Medtronic, Inc.,* 836 F.2d 1332 (Fed.Cir.1988). In *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83 (5th Cir.1976) the court explained:

> Assignment of the patent does not assign Mr. Irons (the attorney) along with it. The relationship between an attorney and his client is personal.... As in all relationships of this nature, the rights and duties may not generally be assigned or delegated without the consent of all parties. Id. at 90.

Similarly, the transfer of assets to the FDIC in its corporate capacity does not transfer the attorney-client privilege of DCNB. Plaintiff is merely a purchaser of its assets. Such purchase does not place plaintiff FDIC in the role of client of the former attorneys of the bank.

The Lohoefeners have argued the same result would apply under Kansas law. Pursuant to Fed.R.Evid. 501, Kansas law on the attorney-client privilege appears to apply to some or perhaps all the issues in this case. Kansas law on the attorney-client privilege, K.S.A. 60–426 would not permit the FDIC in its corporate capacity to assert the attorney-client privilege once held by DCNB. K.S.A. 60–426 defines the "client" who may claim the privilege:

> "Client" means person or corporation or other association that, directly or through an authorized representative, consults a lawyer or lawyer's representative for the purpose of retaining a lawyer or securing legal service or advice from the lawyer in his or her professional capacity; ...

K.S.A. 60–426(c)(1). By the terms of the statute, the FDIC in its corporate capacity would not be a client. It never consulted Stinson, Mag and Fizzell.

K.S.A. 60–426(a) further provides:

> The privilege may be claimed by the client in person or by his or her lawyer, or if an incapacitated person, by either his or her guardian or conservator, or if deceased, by his or her personal representative.

The statute would not permit the FDIC, as the assignee of certain assets, to claim the privilege on behalf of DCNB. This interpretation is consistent with the commentator's conclusion that the attorney-client privilege is available to corporate clients until dissolution, but not thereafter. *II Winstein's Evidence,* ¶ 503(c)(01) (1986 and Supp.1988). Thus Kansas law appears to be consistent with federal common law in that the FDIC, as the assignee of assets, could not assert the attorney-client privilege of the former owner of the assets.

 Defendants Ray A. Lohoefener, Gregory K. Lohoefener, Nitsch, Euhus, Moore and Helmkamp, also argue they are entitled to copies of the privileged documents withheld by Stinson, Mag and Fiz-

zell. They assert they control the privilege for certain documents and the privilege has been waived as to others. The court declines to rule upon this issue. It is not properly before the court. There is no indication the defendants have requested production of these documents in accordance with the Federal Rules of Civil Procedure. A ruling at this point would be premature and advisory. It is not clear that the instant motion and briefing adequately addresses the issue. Moreover, Stinson, Mag and Fizzell is not a party to this action and has had no opportunity to address it.

Defendants have requested production of documents from the FDIC. However, the FDIC does not control the privilege with respect to the documents withheld by Stinson, Mag and Fizzell. Until the documents have been properly requested from Stinson, Mag and Fizzell the court declines to rule on the question presented.

Fed.R.Civ.P. 26(c) empowers the court to award sanctions in connection with a motion to compel. In this case, however, the court finds the circumstances do not warrant the imposition of sanctions in connection with this motion.

In summary, plaintiff's Motion to Compel or, In the Alternative, Motion for Determination of Attorney–Client Privilege (doc. 114) is denied in part and granted in part. The court denies plaintiff's Motion to Compel and grants the Motion for Determination of Attorney–Client Privilege to determine the privilege is not controlled by the FDIC in its corporate capacity. As stated herein, the FDIC does not control the attorney-client privilege once held by DCNB.

IT IS SO ORDERED.