**In re PECK FOODS, Debtor.**

**John F. WALDSCHMIDT, Trustee, Plaintiff,**

v.

**COMPCARE HEALTH SERVICES INS. CORP., Defendant.**

**Bankruptcy No. 93–24416. Adversary No. 96–2132.**

United States Bankruptcy Court, E.D. Wisconsin.

May 17, 1996.

von Briesen, Purtell & Roper, S.C., Milwaukee, WI, for plaintiff.

Whyte Hirschboeck Dudek, S.C., Milwaukee, WI, for defendant.

## DECISION

M. DEE McGARITY, Bankruptcy Judge.

### Introduction

This case raises the issue of whether the law firm that represented a chapter 11 debtor can represent the defendant in a preference action brought by the chapter 7 trustee after the case is converted. The answer to this question appears at first to be obvious. Apparently it was not; otherwise, the parties would have resolved it themselves, and there would be no issue for the court to decide. Also, how it was presented is unusual, both in substance and procedure.

Whyte Hirschboeck Dudek, S.C., moved for approval of its employment as counsel for defendant, Compcare Health Services Insurance Corporation (Compcare), in the above preference action. The Chapter 7 Trustee, along with the United States Trustee's Office, opposed the motion as procedurally defective under bankruptcy law and on the merits because of conflict of interest.

This court previously held that the procedure was proper. Although the bankruptcy court is not explicitly empowered to approve counsel for the defendant, a dispute already exists as to the defendant's representation. There is no code section specific to this situation, but resolution is necessary for the case to proceed. Therefore, the controversy was sufficiently ripe for the court to rule pursuant to its general supervisory powers under 11 U.S.C. § 105.

This decision represents the court's findings of fact and conclusions of law under

Fed.R.Bankr.P. 7052. This motion was brought within a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### Facts

Whyte Hirschboeck Dudek, S.C., (WHD) was retained to represent Peck Foods Corporation (Peck), a business engaged in the slaughter of livestock and the processing of meat products, on or about November 18, 1992. It was subsequently appointed as counsel to Peck after Peck filed its chapter 11 petition on August 2, 1993. The Debtor's Application to Employ Attorneys Under General Retainer provided that WHD was being appointed to provide general legal advice to Peck regarding, among other things, the powers and duties of a debtor-in-possession, investigation and analysis of the financial situations and affairs of the debtor, and assistance in preparing the debtor's statements and schedules. The attorney who was primarily responsible for the chapter 11 case is based in Milwaukee.

The firm's Interim Fee Application dated December 1, 1993, showed that WHD spent 181.90 hours reviewing the debtor's records and preparing its schedules and statements for filing with the court. Questions 3(a) and (b) of the Statement of Financial Affairs, which require the debtor to set forth all payments made to creditors within 90 days prior to the filing date and to insiders within one year prior to the filing date, state that WHD was paid approximately $166,000 for prepetition services. WHD applied for interim compensation and reimbursement of expenses in the amount of $212,290.62. The court allowed $165,504.62 in interim compensation and expenses, and authorized payment of WHD's retainer with the debtor, which amounted to approximately $109,000.

On March 1, 1994, the case was converted to one under chapter 7, and John F. Waldschmidt was appointed chapter 7 trustee. Approximately $31,000 in WHD's attorney fees and expenses remains as an unpaid chapter 11 administrative expense in the chapter 7 case.

Peck's lead chapter 11 counsel testified that, as part of his representation of Peck during its reorganization, he had access to the books and records of the corporation upon request. He further stated that he did not perform a preference analysis during his representation of the debtor; however, during the period shortly before filing, he advised Peck that it should not do anything to artificially inflate its trade debt. He stated he gave no advice about favoring certain creditors because the debtor was very short of cash. He did not know about specific prepetition payments made by the debtor other than payments to employees, payments under the Packers and Stockyards Act, and payments to cattle sellers and brokers. In conversations with the chapter 7 trustee, the attorney further stated that he did not know of any out of the ordinary transactions.

Substantially all of Peck's assets were sold during the pendency of the chapter 11 case under 11 U.S.C. § 363. The sale contract, negotiated and recommended by WHD as counsel, included a provision modifying the sale price based on preference recovery by a trustee following the contemplated conversion. Per the sale contract, if the preference recovery turned out to be less than $100,000, the buyers were obligated to pay the difference between $100,000 and the amount actually recovered.

Compcare was a client of WHD in other matters unrelated to Peck Foods for approximately a year before this adversary proceeding was filed, and the firm has represented Compcare's parent corporation and other related corporations for many years. WHD's division in Madison, Wisconsin, was retained by Compcare in the preference action initiated against it by the trustee in Peck's chapter 7 proceedings. The trustee was then asked by WHD's Madison counsel to waive on behalf of the debtor estate any conflict of interest that might exist on account of WHD's representation of Compcare. The trustee declined, and the U.S. Trustee was advised of the situation. Instead of filing an answer in the adversary proceeding and waiting for the promised objection, the parties agreed to an extension of the time to answer, and WHD moved the court for approval of counsel.

## Arguments

■ WHD contended that its prior representation of Peck in the chapter 11 proceedings did not present a conflict of interest for its representation of the defendant in this preference action brought by the chapter 7 trustee. Under Wisconsin Supreme Court Rule 20:1.9,[1] an attorney cannot represent a party adverse to a former client in a matter substantially similar to the matter at issue in the former representation. The firm argues that this rule is not implicated because the chapter 7 trustee is not a "former client" of WHD. *See Bagdan v. Beck,* 140 F.R.D. 660 (D.N.J.1991); *Federal Deposit Insurance Corp. v. Amundson,* 682 F.Supp. 981 (D.Minn.1988). This results primarily because the chapter 7 estate is an entity distinct from the chapter 11 estate.

The firm also has a second theory that allows its representation of Compcare. According to WHD, its representation of a defendant in a preference action brought by the chapter 7 trustee is not substantially related to its prepetition and chapter 11 representation of Peck. Because WHD conducted no preference analysis, this theory goes, it has no confidential information pertaining to Peck that could be used to the chapter 7 trustee's disadvantage.

The chapter 7 trustee, with support by the United States Trustee, disagreed with both reasons propounded by WHD. The trustee argued not only that the chapter 7 trustee is a successor to the chapter 11 entity and entitled to raise the privilege issue, the "substantial relationship" test disqualified WHD, as well. *See Burkes v. Hales,* 165 Wis.2d 585, 478 N.W.2d 37 (Ct.App.1991). WHD represented Peck approximately ten months prior to filing its chapter 11 petition and continued representation until the case was converted to one under chapter 7. Commensurate with that representation, the firm advised its client in various business matters, including preparation of schedules and statements filed with the court. As one of the questions on the statement of affairs required disclosure of debt payments during the 90 days before filing, access to Peck's payment history with Compcare was necessary to such preparation. Consequently, the trustee argues that there is a substantial relationship between matters arising during the chapter 11 and in an action to recover a preference, and whether the attorney actually obtained confidential information is irrelevant.

## Discussion

■ The threshold issue in this matter is whether there existed an attorney-client relationship between WHD and an entity for which the chapter 7 trustee can claim the resulting privilege. Once the attorney-client relationship is found to exist, the court must apply the "substantial relationship" test to determine whether the subject matter of the proposed representation is so similar to the previous representation that it would be unfair for the attorney to continue the proposed representation. *Burkes v. Hales,* 165 Wis.2d 585, 591, 478 N.W.2d 37, 40 (Ct.App.1991); *Berg v. Marine Trust Co.,* 141 Wis.2d 878, 884–85, 416 N.W.2d 643, 647 (Ct.App.1987); *see also Amundson,* 682 F.Supp. at 986. The purpose of disqualification under these circumstances is to keep an attorney from acting against the interests of a former client by later representing an adverse party in a matter involving substantially the same relevant facts. If the attorney were allowed to "switch sides," a client might be reluctant to divulge confidential information which, in turn, might someday be used against the client. The preservation of client confidences and the maintenance of undivided loyalty of the attorney to the client, both during and after representation, is essential to the attorney-client relationship.

---

1. Wisconsin Supreme Court Rule 20:1.9 provides as follows:

   A lawyer who has formerly represented a client in a matter shall not:

   (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation; or

   (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

### 1. *Attorney-Client Relationship*

Compcare could be represented by WHD if the chapter 7 trustee does not stand in the shoes of WHD's former client, Peck as a chapter 11 debtor, with respect to the attorney-client privilege. WHD argued that the rule articulated in *Bagdan v. Beck,* 140 F.R.D. 660 (D.N.J.1991), is applicable to this case. In *Bagdan,* the chapter 7 trustee of a defunct corporation brought an action against a member of the corporation's board of directors. The law firm which formerly represented the defunct corporation now represented the individual director. The trustee moved to disqualify the law firm, arguing that the trustee succeeded to the corporation's rights to attorney-client privilege. The court denied the trustee's motion, finding that a chapter 7 trustee was not a "former client" when the corporation was defunct in a chapter 7 liquidation proceeding. The court explained:

> [The corporation] is, for all intent and purposes, "dead." The shell of [the corporation] continues to exists [sic] for the sole purpose of marshaling and distributing assets. As the bank was not a party in *Amundson,* the corporation ... is not a party here.

*Id.* at 667.

The *Bagdan* court relied on *Federal Deposit Insurance Corp. v. Amundson,* 682 F.Supp. 981 (D.Minn.1988), in which the court denied the motion of the FDIC, the purchaser of an insolvent bank's assets, to disqualify an attorney from representing the former chairperson of the bank's board of directors in a suit against the FDIC. The attorney had previously represented both the bank and its directors. *Id.* at 983. The court found that the bank no longer existed and, thus, the FDIC was an entirely different entity and not a "former client" in the subsequent action. *Id.* at 987.

The *Amundson* court distinguished the facts presented to it from those in *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 352–53, 105 S.Ct. 1986, 1992–93, 85 L.E.2d 372 (1985). According to *Weintraub,* the chapter 7 trustee in bankruptcy assumes control of the business and renders the debtor's directors powerless.

The chapter 7 trustee's function is analogous to the function of the board of directors in that the trustee succeeds to all of its assets and records and can even run the business with court approval. 11 U.S.C. § 721; *Weintraub,* 471 U.S. at 352–53, 105 S.Ct. at 1992–93. Consequently, the Supreme Court held that the chapter 7 trustee also assumes the attorney-client privilege of the corporation. *Id.* at 358, 105 S.Ct. at 1995–96.

The *Amundson* court held that the FDIC, in its corporate capacity as purchaser of certain assets of the bank, was not the same "client" as the bank. In reaching its conclusion, the court rejected the analogy that the FDIC is the same as a bankruptcy trustee and, therefore, should be treated as the "former client":

> This Court finds the analogy strained. The bankruptcy trustee maintains the preexisting entity, managing its affairs. The prior management is supplanted and efforts are made to run the existing business entity in a prudent fashion or to systematically wind it down and fairly distribute its assets.
>
> In the present case, the better analogy shows the FDIC to be a liquidator. A disaster has hit an insured building. The insurance company (the FDIC as receiver) has paid on its policy and sells the disaster site—lock, stock, and barrel—to a liquidator (the FDIC in its corporate capacity). There is no thought or effort to reconstitute the entity or run it at all.

682 F.Supp. at 987. The *Amundson* court explicitly distinguished circumstances in which a bankruptcy trustee is appointed from circumstances where the FDIC takes over a bank. The chapter 7 trustee was held not to be the equivalent of the FDIC.

Conversely, the *Bagdan* court, relied upon by WHD, fails to adequately explain why the attorney's duty, or lack thereof, to the chapter 7 trustee in that case is distinguishable from the attorney's duty to the chapter 7 trustee analyzed in *Weintraub.* The underlying principal in *Weintraub* reflects a continuity of the attorney-client relationship from the prepetition entity through the entity or entities in bankruptcy. In the instant case,

as in *Weintraub,* there has been no change in the entity. Thus, the chapter 7 trustee has the authority to claim or waive the privilege of WHD's former client.

Various other rules applicable to debtors in bankruptcy show there is continuity between the chapter 7 estate and chapter 11 estate: the preferences existed from the date of the chapter 11 filing, not the date of conversion, *see* 11 U.S.C. § 547(b)(4); the tax identification and tax year remained the same, *see, e.g., Matter of Cross,* 119 B.R. 652, 653 (W.D.Wis.1990) (holding that phrase "filing of petition," as used in Code sections excepting from discharge any income tax obligation for which return was due within three years of filing petition, referred to filing of original chapter 11 petition and not to conversion date); and both the debtor in possession and the chapter 7 trustee are fiduciaries for creditors in existence at the chapter 11 filing, *see Weintraub,* 471 U.S. at 355, 105 S.Ct. at 1994 ("[I]f a debtor remains in possession ... the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession."). Because the chapter 7 entity is the same as the chapter 11 entity, it follows that a former client relationship exists between WHD and the chapter 7 entity.

Additionally, as this court explains below, the ruling in *Bagdan* is in direct contravention with Wisconsin Supreme Court Rules, which mirror the ABA Model Rules of Professional Conduct, and the Bankruptcy Code. *Bagdan* ignores the principle that former clients have substantial rights under ethical rules applicable to attorneys, and those rights should not be disregarded on a technicality.

**2.** The standard set forth in the Model Rules of Professional Conduct, promulgated by the American Bar Association, is similar to that applied by the Wisconsin Supreme Court:
RULE 1.9  CONFLICT OF INTEREST: FORMER CLIENT
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
    . . .

## 2. *Representation of Substantially Related Matter*

■ Wisconsin Supreme Court Rule (SCR) 20:1.9 sets forth the "substantial relationship" test used for evaluating whether a conflict of interest exists in representation adverse to a former client:

A lawyer who has formerly represented a client in a matter shall not:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

SCR 20:1.9.[2] The chapter 7 trustee did not consent to waive the conflict of interest enumerated in Wisconsin Supreme Court Rule 20:1.9(a).

A substantial relationship exists between WHD's representation of the chapter 11 debtor and its representation of Compcare. Although chapter 11 counsel did not perform a preference analysis while representing Peck, he could have. In fact, he should have, as both the debtor in possession and the chapter 7 trustee are responsible for recovery of preferences, and the assistance of counsel is vital in assisting the debtor or trustee in performing this duty. The order appointing counsel is not limited in scope regarding issues that are an integral part of the bankruptcy process, and it is irrelevant

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.
MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.9.

that the attorney did not actually examine possible preferences.

An additional consideration supports the disqualification of WHD as attorney for Compcare. An attorney cannot take a position adverse to his/her own interests. *See* SCR 20:1.7 cmt. ("A lawyer's own interests should not be permitted to have adverse effect on representation of a client."). To do so would call into question the attorney's undivided loyalty to the client's interests. WHD's administrative claim against the estate for unpaid chapter 11 services is entitled to priority of payment over unsecured creditors. *See* 11 U.S.C. §§ 348(d), 503(b), 507(a)(1), 726. Its client, Compcare, would have a general unsecured claim if the trustee prevails in the preference action. *See* 11 U.S.C. §§ 502(h), 547, 550. Thus, if WHD were allowed to represent Compcare, a result adverse to Compcare could enlarge the estate to the benefit of WHD. WHD might be paid in full while Compcare receives pennies on the dollar.

Peck's chapter 11 lead counsel also stated that he did not receive information regarding preferences, nor has he communicated any information he had about Peck or its business activities to the attorney in his firm proposing to represent Compcare. Notwithstanding, whether or not actual confidential information was shared with WHD is irrelevant; the issue is whether WHD "could have" obtained such information. *See Burkes,* 165 Wis.2d at 592–93 n. 5, 478 N.W.2d at 40 n. 5 (holding that once the court concludes that there is a substantial relationship between the two representations, no showing need be made that confidences were actually shared). Indeed, the attorney contemplating a client's bankruptcy filing will consider whether preferences can be recovered later. Here, shortly before filing the chapter 11 petition, Peck was short of cash. This is precisely the circumstance when preferences occur. The debtor is trying to salvage the business it has, and it pays only the creditors who apply the most pressure.

■ Additionally, a "Chinese Wall" proposed by WHD cannot be built within WHD to allow representation of Compcare. Su-

preme Court Rule 20:1.10 imputes disqualification between associated attorneys, and there is no exception for attorneys in the same firm that have physically distant offices. Separation of communications between attorneys is only an acceptable device when the conflict arises because an attorney changes firms, a situation that is not applicable here. *See, e.g., Nelson v. Green Builders, Inc.,* 823 F.Supp. 1439, 1446–47 (E.D.Wis.1993) (noting that when a lawyer in a firm changes jobs and later represents an adversary of a client of his or her former firm, the lawyer and his or her new firm may rebut the presumption of shared confidences and avoid disqualification).

Disqualification, particularly so early in the proceeding, does not mean that WHD has actually done anything to harm the interests of either the trustee or Compcare. Nor does it mean that the firm, or any of its attorneys, has actually engaged in unethical conduct. *See Berg v. Marine Trust Co.,* 141 Wis.2d 878, 883, 416 N.W.2d 643, 646 (Ct.App.1987).

Accordingly, based on the preceding analysis, WHD was ordered disqualified as attorney for the defendant. A separate order consistent with this decision has been entered.