**In re SPIVEY CHEVROLET, INC.**

**Bankruptcy No. 94–41365 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Dec. 13, 1996.

---

Barbara Webb, Little Rock, AR, for Trustee.

Ray Baxter and George Ellis, Benton, AR, for Gordon Spivey.

William Waddell, Little Rock, AR, for Wright, Lindsey & Jennings.

Isaac Scott, Little Rock, AR, for Landers.

### ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon two motions to disqualify counsel for a creditor, Landers Auto Sales.

General Motors Acceptance Corporation initiated this Chapter 7 bankruptcy case by filing an involuntary petition on Wednesday, July 20, 1994. On Thursday, July 21, 1994, Ray Baxter, counsel for Gordon Spivey, an individual, contacted Judy Simmons Henry of the law firm, Wright, Lindsey & Jennings ("the Wright firm") regarding possible defenses to the petition. Henry and Baxter discussed how to keep Spivey Chevrolet out of bankruptcy. It was also discussed that Ray Baxter would handle all other matters. On that date, Baxter sent to Ms. Henry copies of the pleadings filed in the bankruptcy case and in a district court action.[1] No retainer was sent to the firm. All documents sent to Henry were pleadings filed in either the bankruptcy court or district court, all of public record. Although a meeting was scheduled between Henry, Baxter and Gordon Spivey for July 26, 1994, Baxter and Gordon Spivey did not appear at the appointment. Ms. Henry's involvement ended on Wednesday, July 27, 1996, with her letter of that date. The letter indicated that she learned on July 26, 1994, that other counsel had in fact been retained to represent Spivey Chevrolet such that there was nothing further for her to do. She forwarded her research and analysis completed to that point, and included the amount due to her for her services. Having spoken only to Ray Baxter from the debtor, reviewed only court documents, and researched relevant law on involuntary petitions, her involvement in the case concluded.

Two months after the filing of the petition, on September 20, 1994, an Agreed Order for Relief was entered and M. Randy Rice appointed trustee. A few months later, on January 17, 1995, the Wright firm filed a Notice of Appearance and Request for Notice advising that it represented Landers Auto Sales, Inc. ("Landers") in the bankruptcy case. The firm had been hired by Landers on December 5, 1994. In December 1994, Isaac Scott, a senior partner with the Wright firm, met with the trustee to discuss a possible bid by Landers to purchase assets of the debtor. Thus, the trustee was aware in December 1994 that the firm represented Landers. One year and five months later the trustee and Gordon Spivey filed motions to disqualify the law firm of Wright, Lindsey & Jennings from representation of Landers on the grounds of a conflict of interest. These motions were filed within days of a Landers' objection to the trustee's motion for approval of a settlement of other litigation.[2] The movants allege that the Wright firm previously represented the debtor Spivey Chevrolet such that it may not now represent a creditor of the debtor in this bankruptcy case.

Rule 1.9 of the Model Rule of Professional Conduct (1983) provides:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rule 1.6 and 1.9(c) that is material to the matter;

unless the former client consents after consultation.

---

[1] From the letter enclosing the documents, it appears that they were merely sent by regular U.S. Mail.

[2] The trustee was aware in early 1995 that Landers would object to the settlement. It was not until an objection was actually filed, however, that the motions to disqualify were filed.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

Thus, Rule 1.9, governing attorneys in this Court,[3] sets forth a test for representations involving former clients: an attorney may not accept a new client in a matter that is the "same or substantially related matter" if the clients' interests are "materially adverse," unless each client consents, after consultation.

■■■ The first issue for the Court is whether the debtor is a former client of the Wright firm.[4] If no attorney-client relationship existed, the rules regarding the attorney's duties of loyalty and confidentiality do not apply. Moreover, there is no presumption of any disclosure of confidential information. *In re Johore Inv. Co. (USA), Inc.*, 157 B.R. 671, 675 (D.Haw.1985). Under Rule 1.9, any party asserting an attorney-client relationship must show that (1) the client submitted confidential information to the lawyer and (2) did so with the reasonable belief that the lawyer was acting as his attorney. Since the attorney-client relationship is contractual and consensual, both objective and subjective factors exist. A significant factor is how specifically the case was discussed. *See Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). However, if an individual seeking counsel reveals confidential information, an implied attorney-client relationship may

arise, even if the attorney is not retained, precluding employment by other, conflicting clients. *See id.* at 1319. Payment of a fee is not determinative of whether a professional relationship was formed. *Id.* at 1317 & n. 6. Further, the source of the fee is not determinative of who is the client for fees are often paid by third persons, not party to the attorney-client relationship.

In the instant case, there is no evidence to support any assertion that an attorney-client relationship was formed. The only evidence before the Court is that court pleadings were submitted to an attorney for review and that within a few days time, another attorney was retained to represent the debtor. The only witness testifying as to whether confidential exchanges were made was from the Wright firm, and he was not a party to any of the conversations. The movants placed no evidence before the Court that any confidences were disclosed or that they believed they hired, or even intended to hire, Ms. Henry. Rather, after merely submitting already public court pleadings to Ms. Henry, they hired another attorney, and even failed to keep an appointment they previously made with Ms. Henry. This behavior demonstrates that representatives of Spivey Chevrolet had no belief then, or now, that they had retained Ms. Henry as the debtor's attorney. Likewise, Ms. Henry's actions, particularly in writing the letter of July 27, 1996, do not indicate that she believed she had been retained. Indeed, the letter states that she understood that another attorney had been hired.

Rule 1.9 prohibits an attorney from accepting a new client in a matter that is the same or substantially related to a matter in representation of a former client. The Commentary to the Model Rules indicates that the focus should be upon the legal issues involved. In addition, the Arkansas Supreme Court indicates that the Court should also look to whether it can be reasonably said

---

**3.** Section 1 of the Procedures of the Court Regulating Professional Conduct of Attorneys At Law adopts the Model Rules as the standard of professional conduct of attorneys in Arkansas.

**4.** The Court assumes, for purposes of this motion, that Spivey Chevrolet, the entity against

whom an involuntary bankruptcy petition had been filed, and the debtor are the same entity for purposes of disqualification purposes. *See generally In re Peck Foods*, 196 B.R. 434 (Bankr. E.D.Wis.1996).

that the attorney might have acquired information related to the subject of the subsequent representation. *Martindale v. Richmond,* 301 Ark. 167, 170, 782 S.W.2d 582 (1990); *see NCK Organization Ltd. v. Bregman,* 542 F.2d 128 (2d Cir.1976).

 In the instant case, there is no relationship between the legal issues involved in the prior research Ms. Henry conducted for Spivey Chevrolet and the work being performed for Landers. Ms. Henry performed some preliminary research and, in a letter written after another attorney had been hired, applied that law to the facts gleaned from the court documents. In contrast, the issues in the matter with Landers relate to an objection to compromise other litigation. The only manner in which these matters even "relate" is that they arose within the context of a bankruptcy case. Factually, the legal issues are totally unrelated such that no "substantial relationship" between the issues exists. Finally, the evidence indicates that there is not even the possibility that the firm might have acquired information related to the subject of the subsequent representation since Ms. Henry merely spoke to an attorney who delivered to her court pleadings.[5]

Under the Model Rules, the new representation must also be materially adverse to the former client's interests. Materiality turns on the particular facts and the degree of the firm's prior involvement.[6] Model Rules of Professional Responsibility, Rule 1.9 Comment. The prior involvement was minimal: Ms. Henry read court documents and briefly researched a single issue. Her letter indicates that only 10 hours had been spent on the case. She was never retained and had no contact with any of the debtor's principals or employees. Whether the putative former client is the debtor or the trustee, the representation is not materially adverse to the former client's interest.

The Wright firm performed a few hours of review at the request of an attorney for the debtor. No confidences were exchanged and the firm was never hired. Accordingly, nei-

ther the debtor nor the trustee can be said to be a former client of the firm. The firm's representation, initiated months later, of a creditor in this bankruptcy case invokes no "substantially related" issues nor presents "materially adverse" representation. Indeed, from the paucity of evidence presented by the movants and the timing of these motions, it appears that the motions are based upon litigation tactics rather than upon any genuine concern that a conflict of interest exists or any desire to protect confidential disclosures. Accordingly, it is

**ORDERED** as follows:

1. The Motion to Disqualify Counsel for Landers Auto Sales, Inc. By Trustee, filed on June 28, 1996, is DENIED.

2. The Motion of Gordon Spivey for Disqualification of Counsel for Landers Auto Sales, Inc., Based Upon Conflict of Interest, filed on June 28, 1996, is DENIED.

**IT IS SO ORDERED.**

---

**5.** Although Gordon Spivey's post-trial brief baldly asserts that confidences were disclosed, he points to no evidence of such disclosures.

**6.** The Court rejects the trustee's assertion that any action taken in opposition to his motion is adverse to the estate.