**NORTH STAR HOTELS
CORP., Plaintiff,**

v.

**MID-CITY HOTEL
ASSOCIATES, Defendant.**

No. Civ. 4–87–793.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 3, 1987.

Michael Stern, Minneapolis, Minn., appeared on behalf of defendant.

Jerry Snider, Minneapolis, Minn., appeared on behalf of plaintiff.

## ORDER

JANICE M. SYMCHYCH, United States Magistrate.

The above matter came before the undersigned United States Magistrate on November 25, 1987 upon defendant's motion to disqualify plaintiff's counsel, Faegre & Benson. Michael Stern, Esq., appeared on behalf of defendant; Jerry Snider, Esq., appeared on behalf of plaintiff. The motion was taken under advisement.

## I. BACKGROUND

Plaintiff filed this action in federal district court on September 4, 1987, alleging breach of a management agreement con-

tract between the parties and seeking damages and declaratory relief. Pursuant to the agreement, plaintiff managed and operated the Minneapolis Hilton Hotel, which is owned by defendant. Jerry Snider of Faegre & Benson represented plaintiff in connection with this management contract beginning in December, 1986. Defendant was represented by David Mylrea of the Estes, Parsinen & Levy law firm. Several weeks ago, Mr. Mylrea informed defendant that his law firm would have to withdraw from representation because of the possibility Mr. Mylrea would be required to testify during this litigation. Thereafter, defendant retained the law firm of Fredrikson & Byron through Michael Stern as counsel.

Defendant brought this motion to disqualify after Faegre & Benson refused to voluntarily withdraw from its representation of North Star. Defendant claims that Faegre & Benson's representation of North Star creates a conflict of interest with respect to two of Faegre's other clients, St. Louis Centre Partners and Burnsville Woods Partnership. An explanation of the partnerships' structures is helpful in elucidating this alleged conflict.

Mid–City Hotel Associates, the defendant in this lawsuit, is a partnership comprised of two general partners, Harry A. Johnson and Helen Johnson, each of whom own 10 percent. The remaining 80 percent is owned by the Johnson's children as limited partners. As a general partner, Harry A. Johnson is personally liable for any potential judgment not satisfied from partnership assets.

St. Louis Centre Partners is a general partnership involved in developing real estate in the vicinity of Highway 100 and Excelsior Boulevard, a project estimated at $80 million dollars. Faegre & Benson has represented St. Louis Centre Partners since its inception. Three general partners own St. Louis Centre: AP Development has a one percent ownership interest; Rosewood Corporation, a client of Faegre & Benson, has a 49.5 percent ownership interest; and Pineapple Management has a 49.5 percent ownership interest. Faegre & Benson rep-

resents both Rosewood Corporation and St. Louis Centre Partners with respect to all legal documents and business dealings with third parties. Pineapple Management is a Subchapter S corporation, 96 percent of which is owned by Harry A. Johnson.

Faegre & Benson also currently represents Burnsville Woods Partnership in its development of a $20 million dollar apartment complex in Burnsville. Rosewood Corporation and HAJ Construction each has a 50 percent ownership interest in the partnership. HAJ Construction is a Subchapter S corporation owned entirely by Harry A. Johnson. The parties concur that both HAJ Construction and Pineapple Management have been separately represented by Howard Cox of the Moss & Barnett law firm in negotiations with St. Louis Centre and Burnsville Woods. In addition, Mr. Cox represented Harry A. Johnson individually in setting up his corporations. It is equally clear, however, that Faegre & Benson has been the sole counsel for the St. Louis Centre and Burnsville Woods Partnerships as entities.

Burnsville Woods Partnership has formally requested that Faegre & Benson withdraw from representation of North Star in the instant litigation. In addition, counsel for defendant represents that on November 30, 1987, Harry Johnson was denied a letter of credit which was predicate to a certain real estate closing for Burnsville Woods. He asserts that the letter of credit was denied on account of a lis pendens filed by Faegre & Benson in connection with this litigation.

Defendant argues that Faegre & Benson's representation of North Star is directly adverse to the interests of two of its other clients, St. Louis Centre and Burnsville Woods; or, in the alternative, will materially limit its representation of them. The undersigned has been persuaded by defendant's arguments and will, therefore, grant the motion.

## II. DISCUSSION

On November 1, 1987, the United States District Court amended Local Rule 1 to state that the professional conduct of attor-

neys licensed to practice in the district court shall be governed by the Minnesota Rules of Professional Conduct. The pertinent provision here is Rule 1.7 which provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.[1]

The factual context of this case makes application of the foregoing rule extremely difficult. Both parties represented to the court that they have diligently searched for legal precedent, but have found no case law bearing squarely on the issues raised. The undersigned has also found none. Therefore, the following analysis relies on the application of the spirit of the MRPC to the facts of this lawsuit, and other precedent.

The parties agree that the conflict of interest here does not involve the stuff of typical disqualification motions: there is no contention by defendant that Faegre & Benson is simultaneously or sequentially representing adverse parties on substantially related matters; or that confidences and secrets of one client will be improperly available to the advantage of another; or that the alleged conflict in any way bears on the substantive matters here in dispute. Rather, the issue is the potential financial impairment of two of Faegre & Benson's clients because of its representation of North Star against Mid–City in this lawsuit. By its very nature, the overriding function of the present lawsuit is to collect money damages from defendant. The assets of the general partner being sued, Harry Johnson, include substantial holdings in two real estate development partnerships represented by Faegre & Benson. Faegre & Benson represents a plaintiff who has the potential for collecting a large judgment which would be financially adversarial to its other clients. If the suit is successful, a judgment for which Harry Johnson is personally liable puts the other two clients at a direct financial risk. Furthermore, to the extent Harry Johnson may be personally liable, his diminished personal assets will make him less able to accommodate his personal guarantees of several millions of dollars of St. Louis Centre and Burnsville Woods partnerships' debt. Given these facts, Faegre & Bensons's representation of North Star in this action is "directly adverse" to the financial interests of its two partnership clients, within the meaning of MRPC 1.7(a).

Plaintiff raises multiple arguments in support of its position that no conflict exists. First, it claims that Harry Johnson is not a client and, therefore, it owes him no duty under the Rules. Simply because Faegre & Benson does not represent HAJ Construction or Pineapple Management does not preclude finding of a conflict. Rather, the court must look beyond the issue of formal representation and determine whether the relationship between Harry Johnson's role as a partner in defendant and his role in the partnership clients of Faegre & Benson has the potential to adversely impact the interests of the law firm's partnership clients. The somewhat sparse authority on this issue makes

1. Prior to November 1, 1987, the American Bar Association Code of Professional Responsibility governed the conduct of lawyers in this District. For purposes of this motion, the outcome would be unaffected by application of the ABA Code.

clear that the fact itself of an adverse party's membership in another organization or entity represented by a law firm cannot and does not determine the conflict issue. Rather, the significance of that individual's position as a member in such an entity must be examined. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2nd Cir.1981). Harry Johnson is a key principal in St. Louis Centre, Burnsville Woods, and Mid–City. He is inferentially a man of some financial substance; $3 million dollars in personal loan guarantees demonstrates a likelihood that in the event of an adverse judgment in this action, plaintiff will look to him for payment. As assets belonging to him, Harry Johnson's interests in the two partnerships represented by Faegre & Benson could be impaired or reduced. His financial position is clearly significant to the two partnerships represented by Faegre & Benson.

 Defendant acknowledges that if the composition of the various partnerships was different—if, for example, Harry Johnson was merely one of many limited partners, or if he had a significantly lesser interest in his Subchapter S corporations— that the outcome most probably should be different. *Cf. Glueck*, 653 F.2d at 749. It is true that in situations where an adverse party is merely a "vicarious client" by virtue of his membership in an organization which a law firm represents, the risks associated with simultaneous representation of adverse interests are minimal. *Shadow Isle, Inc. v. American Angus Association*, No. 84–6126–CV–SJ–6 (W.D.Mo. Sept. 22, 1987) (Westlaw, Allfeds file [1987 WL 17337]). The facts in this case indicate that Harry Johnson is a cornerstone of both the St. Louis Centre and Burnsville Woods partnerships, and as such Faegre & Benson's representation of North Star in a suit against Mid–City poses a direct financial threat to Faegre & Benson's other two clients.

Plaintiff also argues that Johnson should be forced to accept the consequences of the business structures under which he chose to operate, and cannot now claim that a potential judgment against his Mid–City partnership will negatively impact his obligations to his Subchapter S corporations, for which he is not subject to personal liability. It is true that for liability purposes he is bound by the business forms he chose. The issue before the court, however, is not Harry Johnson's liability; rather, it is the scope of a law firm's duties and loyalties to those it represents under the MRPC.

 The district court is empowered to exercise its discretion to responsibly supervise the members of the bar. *Cohen v. Hurley*, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed. 2d 156 (1961); *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 616 F.Supp. 516 (W.D.Mo.1985). The court is sensitive to the fact that motions for disqualification may serve to improperly delay proceedings and to deny a party the counsel of its choice. *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602 (8th Cir.1977), *cert. denied* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978), *overruled on other grounds, In re Multi–Piece Rim Products Liability Litigation*, 612 F.2d 377 (8th Cir.1980). Such motions are to be closely scrutinized for this reason. Here, the facts of record, the conduct of defendant's counsel, and the novel, but difficult issues involved cause the court to conclude that this motion is properly motivated and brought for honorable purposes. Although the traditional disqualification issues which arise in multiple representation cases are not present here, there is a sufficient adversity to two of Faegre & Benson's existing clients as to require disqualification. Although financial adversity has not yet been held to fall squarely within MRPC Rule 1.7(a), there is nothing precluding it from doing so. The unique issue here should not itself operate to preclude disqualification. Any doubt as to whether a law firm should be disqualified is to be resolved in favor of disqualification. *Coffelt v. Shell*, 577 F.2d 30, 32 (8th Cir.1978).

After a careful analysis, the undersigned, therefore, concludes that Faegre & Benson should be disqualified from its representation of North Star in this action. A

law firm simply should not seek to compensate one client from the pockets of another.

Accordingly, based upon the foregoing, and all the records and proceedings herein,

IT IS HEREBY ORDERED:

1. That defendant's motion to disqualify plaintiff's counsel, Faegre & Benson, from its representation in this lawsuit is GRANTED;

2. Plaintiff shall file a notice of appearance of new counsel no later than January 11, 1988; and

3. The presently set Rule 16 pretrial conference is continued until 9:15 a.m. on January 29, 1988.