**BIETER COMPANY, Plaintiff,**

v.

**Beatta BLOMQUIST, City of Eagan, Federal Land Company, Eagan Tower Office Building Partnership, Eagan Heights Commercial Park, Advance Developers, Inc., Cliff Road Properties, Hoffman Development Group, Inc., and Larkin, Hoffman, Daly & Lindgren, Defendants.**

**Civ. No. 3–89–759.**

United States District Court,
D. Minnesota,
Third Division.

June 29, 1990.

John D. Levine, Minneapolis, Minn., for plaintiff.

Joseph W. Anthony, Norman Baer, Minneapolis, Minn., for defendants.

### ORDER

FRANKLIN L. NOEL, United States Magistrate.

The above matter was before the undersigned United States Magistrate on May 7, 1990 on defendants Cliff Road Properties and Hoffman Development Group, Inc.'s motion for disqualification of Dorsey & Whitney as counsel for plaintiffs. Plaintiff was represented by John D. Levine, Esq. Defendants Cliff Road Properties and Hoffman Development Group, Inc. were represented by Joseph W. Anthony, Esq. and Norman Baer, Esq.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bieter Company owns land near the intersection of Interstate Highway 35E and Diffley Road in Eagan. In September 1986 Bieter announced its intention to develop this property as a regional shopping center, to be called the "35E/Diffley Center". At this time Bieter's property was zoned for mixed residential use, so Bieter began the process of obtaining approval for the project from the City of Eagan, which included seeking an amendment to Eagan's Comprehensive Land Use Guide Plan. At that time, Bieter had already begun soliciting major tenants for the project, and had allegedly obtained a commitment from Target Stores to be an anchor tenant, provided that the necessary zoning amendments could be obtained by April of 1988.

According to the movants, in January 1987 an entity known as RHC Associates Joint Venture[1] announced plans for the

---

1. According to defendants CRP and HDG, the RHC joint venture existed as an entity in 1987,

development of another shopping center, Cliff Road Centre, to be built at 35E and Cliff Road, approximately a mile away from the proposed 35E/Diffley Center. Also according to the movants, the RHC joint venture is comprised of Ryan Eagan Associates as general partner and 75 percent owner, HDG Associates Limited Partnership as a 10 percent owner, and Eagan Associates Limited Partnership as a 15 percent owner. Ryan Eagan Associates was formed by and is under the control of Ryan Properties, Inc., an affiliate of Ryan Construction Company of Minnesota, Inc. (hereinafter "Ryan Construction"). Defendant Hoffman Development Group, Inc. (hereinafter "HDG") is the general partner of HDG Associates Limited Partnership. Eagan Associates Limited Partnership, formerly known as CRP Associates Limited Partnership, was formed by and is under the control of the partners of Defendant Cliff Road Properties (hereinafter "CRP").

In February 1987 the City of Eagan denied Bieter's request for approval of its proposed zoning changes. The City's denial of these zoning changes is the subject of a separate lawsuit filed by Bieter in March 1987 in Dakota County District Court. Bieter retained the law firm of Dorsey & Whitney (hereinafter Dorsey) to represent it in this state court action.

According to CRP and HDG, in June 1987 Ryan Construction retained the Dorsey firm to represent it in negotiations with Target regarding Cliff Lake Centre.[2] Ryan Construction apparently had a long-standing, and satisfactory, relationship with the Dorsey firm. Also in June 1987, Target announced that it would locate a store in Cliff Lake Centre. The Dorsey firm was allegedly retained by the RHC joint venture sometime thereafter to prepare a purchase agreement for the sale of property to Target.

At the time the Target contract for the Cliff Lake Centre was being finalized, Jack Daly, a principal of CRP, questioned the principals of Ryan Construction about the propriety of using the Dorsey firm because of Dorsey's representation of Bieter in the Dakota County matter. James Ryan, a Ryan Construction principal, spoke with Dorsey attorney Duane Joseph about this concern. Dorsey concluded that there was no conflict of interest because Dorsey's representation of Bieter in the Dakota County matter concerned the zoning dispute with the city, which Dorsey believed had nothing to do with negotiating the terms of RHC's contract with Target.

In November 1989 Bieter, represented by the Dorsey firm, commenced the instant action against CRP and HDG, as well as other defendants. Plaintiff expressly chose not to sue Dorsey clients Ryan Construction and the RHC Joint Venture. Bieter alleges in Count V of its amended complaint, filed in February 1990, that defendants CRP and HDG tortiously interfered with Bieter's negotiations with Target Stores to locate in Bieter's proposed 35E/Diffley Center.[3]

In the motion now before the court, CRP and HDG contend that the Dorsey firm represented its interests in negotiations with Target for the location of a store in the Cliff Lake Centre. Because these negotiations with Target are the subject of Count V of Bieter's amended complaint, and because the Dorsey firm represents plaintiff in the instant matter, CRP and HDG allege that the Dorsey firm has a conflict of interest in continuing to represent plaintiff Bieter in this lawsuit. They have therefore requested that the Dorsey

and was restated and amended as a Minnesota partnership in February 1988. Further discussion concerning this joint venture as a viable entity exists elsewhere in this order.

2. Dorsey contends that it was retained by Ryan Construction in June 1987 to represent it in "negotiating with other entities to form a joint venture to further develop Cliff Lake Centre."

3. At the hearing on this matter defendants HDG and CRP stated their intention to implead Ryan Construction, the RHC Joint Venture and the Dorsey firm, contending that any interference in the Bieter–Target negotiations for which they may be liable was actually done by Ryan, RHC and Dorsey. Dorsey concedes that if Ryan or RHC were third party defendants the firm would be disqualified from representing plaintiff absent the consent of Ryan and RHC.

firm be disqualified from representing plaintiff.

## II. DISCUSSION

The professional conduct of attorneys licensed to practice in the federal district court is governed by the Minnesota Rules of Professional Conduct. Local Rule 1, United States District Court for the District of Minnesota; *North Star Hotels v. Mid–City Hotel Associates,* 118 F.R.D. 109, 110–11 (D.Minn.1987). Defendants' disqualification motion is based upon Rule 1.9 of the Minnesota Rules of Professional Conduct, which states:

A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

■ One who seeks to disqualify counsel under these rules must show that: 1) the moving party and opposing counsel actually had a prior attorney client relationship; 2) the interests of opposing counsel's present client are adverse to the movant; and 3) the matters involved in the present underlying lawsuit are substantially related to the matters for which the opposing counsel previously represented the moving

party. *Federal Deposit Insurance Corp. v. Amundson,* 682 F.Supp. 981, 986 (D.Minn.1988); *citing Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602, 608 (8th Cir. 1977), *cert. denied* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978).[4] A motion for the disqualification of counsel should be made with reasonable promptness after a party discovers the facts which lead to the motion. *Central Milk Producers Co-op. v. Sentry Food Stores,* 573 F.2d 988 (8th Cir. 1978); *Redd v. Shell Oil Co.,* 518 F.2d 311 (10th Cir.1975).

Plaintiff's Amended Complaint alleges that defendants CRP and HDG[5] knew about the business relationship between Bieter and Target, asserts that they misrepresented to Target the status of Eagan's zoning requirements, and that they therefore "intentionally and improperly interfered with the business relationship between Bieter and Target Stores by inducing or otherwise causing Target Stores not to continue the business relationship with Bieter and by preventing Bieter from continuing the business relationship with Target Stores."

■ In accordance with the standards set forth in *Federal Deposit Insurance v. Amundson, supra,* the undersigned finds that Bieter's position as plaintiff in the instant lawsuit is adverse to movants, defendants CRP and HDG. Both plaintiff on the one hand and HDG and CRP on the other wanted Target as a tenant in their respective shopping centers. The respective parties are now on opposite sides of a lawsuit in which the facts surrounding Target's decision to go with one instead of the

**4.** The *Amundson* case was decided under various provisions of the American Bar Association Code of Professional Responsibility, which applied to lawyers practicing before the Federal District Court at the time that case was decided. 682 F.Supp. at 983. The court noted that application of Minnesota's Rules of Professional Conduct, as adopted by the local rules on November 1, 1987, would render a similar result. *Id.* at 983, n. 2.

**5.** Plaintiff claims in its complaint that an entity it calls the "Cliff Road Developers", consisting of defendants Advance Developers, Inc., CRP and HDG, was the entity responsible for the development of Cliff Lake Centre and, therefore, was

the entity responsible for conducting negotiations with Target. Defendants CRP and HDG have asserted that this is an "imaginary entity" created by plaintiff. Robert Hoffman, one of the general partners of Cliff Road Properties, states in his affidavit in support of the instant motion that the developer of Cliff Lake Centre was the RHC joint venture, consisting of Ryan Construction and defendants CRP and HDG. Hoffman further states that the principals of Ryan Construction had primary responsibility for the development of Cliff Lake Centre, and as such were solely responsible for all negotiations with Target.

other is a central issue. Further, the undersigned finds that the issue in this lawsuit, i.e. defendants' alleged interference with plaintiff Bieter's relationship with Target Stores, is substantially related to Dorsey's prior representation of Ryan Construction and the RHC joint venture in negotiating the contract by which Target became a tenant at Cliff Lake Centre, the shopping center developed by defendants.

The outcome of the instant motion then turns on the question of whether an attorney client relationship existed between Dorsey and defendants CRP and HDG by reason of Dorsey's representation of Ryan Construction and the RHC joint venture in connection with their contract negotiations with Target. The undersigned finds that there was no attorney client relationship between the Dorsey firm and defendants CRP and HDG.

CRP and HDG concede they never formally retained Dorsey but they rely upon Rule 1.13, Minnesota Rules of Professional Conduct, for the proposition that when Dorsey represented the RHC joint venture, it represented CRP and HDG as constituent parts of that entity. Rule 1.13 provides:

> (a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

CRP and HDG contend that they are "constituent parts" of the RHC joint venture which developed Cliff Lake Centre, and that when the Dorsey firm undertook representation of Ryan Construction for the purpose of negotiating a contract with Target, Dorsey was effectively representing the interests of the entire RHC joint venture in securing Target as a tenant for Cliff Lake Centre. They argue that because they are constituents of the RHC joint venture, the attorney client relationship which existed between Dorsey and the RHC joint venture is sufficient to preclude Dorsey from representing Bieter in this matter.

Defendants' reliance on Rule 1.13 is misplaced. In explaining the meaning of "constituents", the 1985 Comment to Rule 1.13 explains that constituents of an organizational client are not the clients of the lawyer.[6] Even though CRP and HDG were constituents of Dorsey client the RHC joint venture, they themselves were not clients of Dorsey, and they have therefore failed to establish the first prerequisite for disqualification: that the moving party and opposing counsel actually had a prior attorney-client relationship. Dorsey's disqualification is therefore not required by Rule 1.9.

Disqualification questions are intensely fact specific, and it is essential that the court approach such questions with a "keen sense of practicality as well as a precise picture of the underlying facts." *Huntington v. Great Western Resources, Inc.,* 655 F.Supp. 565, 567 (S.D.N.Y.1987). As a general rule, only the former client may move for disqualification. *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 88 (5th Cir.1976).

■ Defendants CRP and HDG argue that under the facts here Dorsey represented their "interests ... in the very transaction which constitutes the substance of Count V of plaintiff's amended complaint." The undersigned agrees, based upon the affidavits submitted by all parties, that the interests of CRP and HDG were [7] identical to those of RHC and Ryan Construction. They all wanted the development of Cliff

---

6. For example, after explaining that communications between the constituents and the lawyer are protected by the rule pertaining to confidentiality of information, the comment states: "This does not mean, however, that constituents of an organizational client are the clients of the lawyer." .

7. CRP is the owner of the land on which the Cliff Lake Centre is located. *See* Affidavit of Jack F. Daly, paragraph 2. As a property owner, CRP wanted to contract with a commercial·

developer to develop the Cliff Lake Centre; as a result, the RHC joint venture, consisting of CRP, HDG and Ryan, was created. *See* Affidavit of Jack Daly, paragraph 3. Dorsey was retained by Ryan Construction in June 1987 to create the RHC joint venture for the development of Cliff Lake Centre. *See* Affidavit of Duane E. Joseph, paragraph 3. Dorsey represented the RHC joint venture in preparing a purchase agreement for the sale of Cliff Lake Centre property to Target. *See* Affidavit of Duane E. Joseph, paragraph 5.

Lake Centre to succeed. To the extent the Dorsey firm facilitated the development of Cliff Lake Centre, by its representation of RHC and Ryan, it represented the interests of CRP and HDG. These facts should certainly cause a lawyer to pause before undertaking the representation of a plaintiff who contends that contracts which that lawyer's firm helped to negotiate were the culmination of a course of tortious conduct by affiliates of the law firm's other clients. Indeed, to borrow the words of Canon 9 of the now repealed Code of Professional Responsibility, these facts might even give rise to an "appearance of impropriety."[8] Representing the "interests" of a party is, however, not the same as representing the party, and absent an attorney-client relationship between CRP and HDG on the one hand, and Dorsey & Whitney on the other, there is no violation of Rule 1.9.[9]

Defendants CRP and HDG also challenge Dorsey's representation under Rule 3.7 of the Rules of Professional Conduct, which prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness. CRP and HDG contend that the Dorsey lawyer who represented Ryan and RHC in the Target contract negotiations will be a necessary witness at trial. However, Rule 3.7(b) expressly provides that:

> "A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."

8. The Code of Professional Responsibility was replaced by the Rules of Professional Conduct in part to substitute clear concrete rules for the moralistic abstractions contained in the Canons and Ethical Considerations which comprised the first two levels of the three level Code. The Code was divided into three levels: the Canons were single sentence axioms by which lawyers were to guide their conduct. Ethical considerations were aspirational goals which lawyers should strive to achieve. The Disciplinary Rules defined the minimum level of acceptable conduct expected of attorneys. Disciplinary action could be imposed only for violating the Disciplinary Rules. *See* Note, "Movement in Attitude and Structure from the Code to the Model Rules," 9 *Wm. Mitchell L.Rev.* 341, 349–53 (1984). Under the Rules, and even under the Code, disqualification should not be required simply because this Magistrate finds the representation at issue here to be improper and unseemly. *Board of Education v. Nyquist,* 590 F.2d 1241, 1247 (2nd Cir.1979); *Waters v. Kemp,* 845 F.2d 260, 265 (11th Cir.1988).

9. This holding is not inconsistent with the holding of former Magistrate Symchych in *North Star Hotels v. Mid–City Hotel Associates, supra.* There a disqualification motion was brought by a partnership defendant challenging plaintiff's representation by a law firm where plaintiff's law firm had never represented defendant but did represent two other partnerships in which defendant's general partner was also the general partner. The defendant contended that plaintiff's lawyer was prohibited by Rule 1.7(a) of the Rules of Professional Conduct from representing plaintiff because the representation of that client was directly adverse to another client; the two non-party partnerships.

In deciding that the lawyer's representation of the plaintiff was directly adverse to its representation of its partnership clients, the court focused on the possibility that a judgment against the partnership defendant would impact on the lawyer's partnership clients because of the general partner's financial position with respect to the defendant partnership as well as the partnership clients. Thus, the court found that Rule 1.7(a) mandated that the lawyer be disqualified from representing plaintiff.

In *North Star Hotels,* there was no question about whether an attorney client relationship existed between the lawyer and the two clients whose interests were alleged to be adverse under Rule 1.7. Here, unlike in *North Star Hotels,* the undersigned has concluded there was no attorney client relationship between CRP and HDG and plaintiff's lawyer. Consequently, even though there is adversity between the interests of HDG and CRP on the one hand, and plaintiff on the other, here, unlike in *North Star Hotels,* there is missing an attorney client relationship between the lawyer and one set of alleged clients whose interests are adverse to the other client.

Although there is an attorney client relationship between Dorsey and RHC and Ryan, and although the interests of RHC and Ryan on the one hand and plaintiff on the other would clearly be adverse if RHC and Ryan were parties to this litigation, unless and until they are made parties, there is no adversity between the interests of the various entities which were and are clients of plaintiff's law firm. The undersigned expresses no opinion on whether HDG and CRP will have standing to challenge Dorsey's representation of plaintiff in the event former Dorsey clients are made parties to this litigation and consent to Dorsey's representation of plaintiff. The motion will, therefore, be denied without prejudice.

**226**

As the undersigned has concluded that Rule 1.9 does not preclude Dorsey's representation of plaintiff, it likewise does not preclude the Dorsey lawyer who negotiated the contract from being a witness at trial.

Based upon the foregoing and all of the files, records and proceedings herein,

IT IS HEREBY ORDERED that

Defendant CRP and HDG's motion to disqualify Dorsey and Whitney from representing plaintiff in this matter is DENIED without prejudice.